**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 04, 2010, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: January 04, 2010**

_____
**Arthur I. Harris
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 01-50935 |
| | ) | |
| COUNSELOR MATERIAL | ) | Chapter 7 |
| PROCESSING, INC., | ) | |
|    Debtor. | ) | |
| | ) | |
| KATHRYN A. BELFANCE, | ) | |
| TRUSTEE, | ) | Adversary Proceeding |
|    Plaintiff, | ) | No. 09-1172 |
| | ) | |
| v. | ) | Judge Arthur I. Harris |
| | ) | |
| MARY GAITHER, *et al*, | ) | |
|    Defendants. | ) | |

MEMORANDUM OF OPINION[1]

This matter is currently before the Court on cross-motions for summary judgment filed by the plaintiff-trustee, Kathryn Belfance (trustee), and the defendants Mary Gaither (Gaither) and TD Ameritrade, Inc. (Ameritrade). The

---

[1] This Memorandum of Opinion is not intended for official publication.

trustee's complaint asserts various claims against Gaither and Ameritrade, all related to the alleged postpetition conversion of property of the debtor's estate. For the reasons that follow, the defendants' motions for summary judgment are granted, and the trustee's motion for summary judgment is denied.

## FACTS AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. On March 22, 2001, the debtor, Counselor Material Processing, Inc., (Counselor Material Processing) filed a voluntary petition under Chapter 7 of the Bankruptcy Code (Case # 01-50935). Kathyrn Belfance was appointed as the Chapter 7 trustee. Among the assets listed on the debtor's Schedule B were accounts receivable with a book value of $286,271.15. The description of this property on Schedule B identified a particular receivable owed by Metal Management, "which is in Ch. 11 case," in the amount of approximately $175,000.

*1. Relief from Stay and Abandonment of the Accounts Receivable*

On April 17, 2001, National City Bank moved for relief from stay and abandonment, asserting that it had a blanket lien on all the personal property owned by the debtor. On May 31, 2001, the Court granted relief from stay and abandonment in an agreed order signed by the trustee, counsel for the debtor, and counsel for National City Bank. The final sentence of the agreed order provides:

2

"The Trustee is authorized and directed to abandon such Collateral."

*2. Metal Management Stock*

On October 1, 2001, Metal Management issued 7,463 shares of stock to Counselor Material Processing in payment of the accounts receivable. On or before November 14, 2002, the trustee became aware that Metal Management had issued stock to Counselor Material Processing.

Counselor Material Processing and another company Counselor Engineering, Inc., (Counselor Engineering) were both controlled by Albert C. Schulz. On March 25, 2004, Schulz executed a durable power of attorney naming Gaither, his daughter and defendant in this adversary proceeding, as his attorney-in-fact.

In February, 2006, Gaither contacted LaSalle Bank to have the Metal Management stock reissued. LaSalle Bank had served as the transfer agent when the Metal Management stock was first issued to Counselor Material Processing. On March 7, 2006, LaSalle Bank reissued the stock to Counselor Material Processing. On March 9, 2006, Gaither began the process of transferring the stock to Counselor Engineering.

Counselor Engineering maintained a brokerage account with Ameritrade. In May, 2005, Ameritrade received an application to add Gaither to the Counselor

Engineering account. In July, 2005, Ameritrade received a copy of the durable power of attorney which named Gaither the attorney-in-fact for her father Albert Schulz. On March 27, 2006, the Metal Management stock was transferred to the Ameritrade account of Counselor Engineering. From April 6, 2006, through April 18, 2006, the shares were sold for $239,473.09. On April 19, 2006, the cash proceeds from the stock sale were transferred from the Ameritrade account of Counselor Engineering to the Ameritrade account of Gaither and her husband.

*3. The Current Adversary Proceeding*

On January 30, 2009, the trustee filed this adversary proceeding against Gaither and Ameritrade. The trustee's complaint includes six claims for relief, all related to the alleged postpetition conversion of property of the debtor's estate. The first five claims are against defendant Gaither: (1) Gaither wrongfully converted property of the estate which should be turned over to the trustee; (2) Gaither violated federal securities law; (3) Gaither violated Ohio corporate law through false representation; (4) Gaither intentionally misrepresented herself in violation of Ohio law; and (5) Gaither breached her fiduciary duty. The sixth claim alleges that Ameritrade violated Ohio investment securities laws. All of the claims rely upon allegations that the alleged conversion in 2006 involved property of the debtor's estate.

4

On May 27, 2009, this adversary proceeding was transferred to the undersigned judge (Docket # 30). Following the completion of discovery, the trustee and the defendants filed cross-motions for summary judgment on October 30, 2009. In addition, on November 3, 2009, the Court dismissed Ameritrade's crossclaims against Gaither, without prejudice, for lack of subject matter jurisdiction. The briefing on the cross-motions for summary judgment is now complete, and the Court is ready to rule.

## JURISDICTION

Actions seeking turnover of property of the estate are core proceedings under 28 U.S.C. section 157(b)(2)(E). The Court has jurisdiction over core proceedings under 28 U.S.C. sections 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio. As all of the trustee's claims essentially seek to recover damages equal to the value of property allegedly converted postpetition from the debtor's estate, the Court has jurisdiction to enter a final judgment. *See generally In re Lowenbraun*, 453 F.3d 314, 320-21 (6th Cir. 2006) (discussing core/non-core distinction and holding that libel suit against Chapter 7 trustee's counsel was a core proceeding because libel suit was based on actions that were "inextricably bound to the bankruptcy proceeding.").

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). The Court shall view all evidence in a light most favorable to the nonmoving party when determining the existence or

nonexistence of a material fact. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

DISCUSSION

While the defendants have raised multiple arguments for granting summary judgment in their favor, the Court will only address one of those grounds, as it is dispositive – namely, that the property allegedly converted postpetition in 2006 was not property of the debtor's estate because the trustee abandoned the property back in 2001.

A critical allegation in each of the trustee's six claims for relief is that the defendants' conduct involved property of the debtor's estate. *See* Complaint at ¶¶ 9, 14, 20, 22, 24, 25, 28, 30, 32, 37, 40, 42, 44, and 46. Yet once property has been abandoned by the trustee, it cannot be "un-abandoned" simply because the trustee later realized that an asset had more value than the trustee initially surmised. *See Kloian v. Kelley (In re Kloian),* 115 Fed. Appx. 768, 769 (6th Cir. 2004); *Russell v. Tadlock (In re Tadlock),* 338 B.R. 436, 439 (B.A.P. 10th Cir. 2006); *Vasquez v. Adair (In re Adair),* 253 B.R. 85, 89-90 (B.A.P. 9th Cir. 2000); *In re Keller*, 229 B.R. 900, 902-04 (Bankr. S.D. Ohio 1998); *In re Ozer*, 208 B.R. 630, 633 (Bankr. E.D.N.Y. 1997); *In re Gracyk*, 103 B.R. 865, 867 (Bankr. N.D. Ohio 1989). " 'Thus, abandonment constitutes a divestiture of all of

7

the estate's interests in the property.' " *In re Keller*, 229 B.R. at 902 (*quoting* Collier of Bankruptcy, § 554.02[3], p. 554-55 (15th ed. 1998)).

In the present case, the debtor's right to payment from the Metal Management account receivable was a scheduled asset, expressly identified in Schedule B. When National City Bank moved for relief from stay and abandonment, alleging that it had a valid first lien in all the debtor's personal property, including accounts receivable, the trustee could have opposed abandonment if the trustee believed that the value of the accounts receivable and other collateral might exceed the amount owed to National City Bank; however, the trustee chose not to do so. Nor has the trustee sought to vacate or amend the May 31, 2001, order granting relief from stay and abandonment or asserted that the agreed abandonment involved an element of bad faith. *See Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001) ("Revocation of abandonment is appropriate, however, where 'the trustee is given incomplete or false information of the asset by the debtor.' ") (*quoting In re Ozer*, 208 B.R. at 633). Thus, the right to payment from the Metal Management account receivable was not property of the debtor's estate at the time of the alleged conversion in 2006. Rather, the right to payment reverted back to the debtor and, by virtue of its security interest, National City Bank. *See generally In re Keystone General, Inc.*, 135 B.R. 275, 282 (Bankr. S.D.

8

Ohio 1991) (secured party may pursue action for conversion of its collateral); Restatement (Second) of Torts §225, Comment d (1965), and Restatement (Second) of Torts § 895, Illustration 3 (1979).

The Court rejects the trustee's assertion that, because the stock certificates constitute "new value," this property somehow transcends or circumvents the trustee's 2001 abandonment of the right to payment from the Metal Management account receivable. As the trustee asserts in her own complaint: "The Debtor had a claim against the company known as Metal Management, Inc. This claim was subsequently satisfied by the issuance of 7,463 shares of stock in said company." Complaint at ¶ 9. That a receivable owed by a company in Chapter 11 bankruptcy turned out to have more value than the trustee initially surmised is of no avail. *See In re Kloian*, 115 Fed. Appx. at 769; *In re Ozer*, 208 B.R. at 633; *In re Gracyk*, 103 B.R. at 867; *In re Wornell*, 70 B.R. 153, 154 (Bankr. W.D. Mo. 1986) ("the law is clear that a 'mistake' in valuation of the property does not allow an abandonment of the property to be revoked"). Thus, regardless of the specific claim for relief (*e.g.*, conversion, violation of federal or state securities law, breach of fiduciary duty owed to the debtor corporation), the alleged conduct and resulting damages did not involve property of the debtor's estate.

The Court also rejects the trustee's assertion that the December 3, 2009,

9

assignment to the trustee of National City Bank's security interest in the Metal Management accounts receivable owed to the debtor somehow turns the stock issued in satisfaction of the debtor's claim into property of the debtor's estate. After the trustee abandoned this right to payment in 2001, the right to payment presumably reverted to the debtor and, by virtue of its perfected security interest, to National City Bank. Consequently, any claim for conversion of the stock in 2006 would belong to the debtor and/or National City Bank, but not to the trustee.

While it is unclear exactly what consideration the trustee paid for the assignment of the bank's security interest in December 2009, the trustee's purported purchase without court approval of an asset from a secured creditor or other third party does not turn that asset into property of the debtor's estate. What happens to that asset is unclear. Perhaps it will be assigned back to the bank, after notice and hearing, pursuant to 11 U.S.C. § 725. In any event, the trustee cannot simply purchase an asset that is not property of the debtor's estate and somehow administer the proceeds of that asset on behalf of the debtor's creditors, at least when there is no dispute that the asset is not property of the debtor's estate.

In granting summary judgment for the defendants, the Court is not saying that a trustee and secured creditor can never agree to pursue claims for conversion jointly when a dispute exists over which party can bring such claims. Rather, the

10

Court is simply holding that when property that is the subject of a conversion claim was abandoned by the trustee and the trustee never sought to vacate or amend the abandonment order, the trustee cannot just buy the claim back from the secured creditor and somehow transform the claim into property of the debtor's estate. Nor is the Court aware of any statute or case law that authorizes a Chapter 7 trustee to purchase claims of third parties and treat the proceeds as property of the debtor's estate.

In addition, the Court is by no means condoning the conduct of an individual who may well have converted valuable property for her personal benefit. The Court is simply holding that the trustee is not the proper party to pursue such a conversion action. For example, there is presumably nothing to prevent the secured creditor from pursuing a conversion action in state court and even retaining the trustee's attorneys, who have invested considerable time and effort in this litigation. But just because Gaither may not deserve to keep the proceeds from the alleged conversion does not mean that the trustee, having previously abandoned the property that is itself the subject of the alleged conversion, is the proper party to pursue such an action.

## CONCLUSION

For the reasons stated above, the defendants' motions for summary judgment are granted, and the trustee's motion for summary judgment is denied. Each party shall bear its own costs and attorney's fees.

IT IS SO ORDERED.